Good morning, ladies and gentlemen. Please be seated. Judge Nguyen and I are honored and delighted to welcome Judge Rastani, who is visiting with us, sitting by designation. We have six matters on the calendar today, but two of them have been submitted. We'll officially submit those at this time. The first is United States v. Bard, and the second is Parker v. Comcast Cable Communications. Those two matters are now officially submitted, and we'll hear our first case schedule for argument, which is United States v. Gage. Good morning, Your Honors, and may it please the Court. My name is Todd Borden, and I represent the appellant, Lloyd Gage. I'm going to endeavor to save two minutes for rebuttal, and I'll keep an eye on the clock here. The district court committed a series of procedural sentencing errors, departing substantially from the requirements laid out by the Supreme Court in Gall and this Court in Carty. Cumulatively, these errors prejudice Gage, and they warrant remand for a procedurally proper sentencing hearing. And I intend to discuss three specific errors today. First, the district court's failure to calculate the applicable guidelines ranges. Second, the court's failure to explain why it imposed the statutory maximum 22-month revocation sentence. And then third, the district court's consideration of improper sentencing factors, particularly as to that revocation sentencing. So I'd like to turn first to the issue of the district court's failure to calculate the guidelines ranges. Both Gall and Carty make clear that at the beginning of any sentencing hearing, the very first thing a district judge has to do is to correctly calculate the guidelines range and resolve any guidelines disputes. This is, of course, because the guidelines, though advisory, continue to guide district court's discretion, and they serve as a starting point initial benchmark. Now here, the district court never stated the guidelines range as to the new felon in possession count, and the district court also failed to state the guidelines range as to the supervised release revocation. Now it's notable that it didn't do so despite the fact that trial counsel objected to both guidelines ranges, and there was a material dispute. Such a total failure to calculate the guidelines range is reversible error, as this court has twice held on a plain error posture, no less, in Hammons and Wachnine. And I believe those are the strongest cases in support of my position today. Particularly, Hammons and Wachnine held that when you fail to calculate a guidelines range, when that's coupled with other procedural sentencing errors, it can rise to the level of a sort of flagrant violation, or there's a flagrant nature to such a violation, which I actually did reference the pre-sentence report, correct? That's right, Your Honor. And then you made comments on various objections. So both ones would argue that he was adopting the pre-sentence report except for any objections that he granted. So we know from the context that that's really what he's doing, probably. Perhaps as to the, I would agree particularly as to the new offense conduct for the felon in possession account, there are comments by the district court suggesting that it agreed with the government's analysis of the guidelines range. I think it's a closer question certainly as to the supervised release revocation. And particularly as to that, I would urge the court to look at the findings the district court made in support of that revocation. Kind of the disputed question here is whether or not it was a grade A violation, if it were the new criminal conduct were a drug offense, or a grade B if it were merely for being a felon in possession of a firearm. Now, all Mr. Gage admitted to was to being a felon in possession of a firearm at the prior sentencing hearing. That's all his counsel admitted to at this hearing. And that's, I would point the court specifically to excerpts of record 56 and 57 for this. And then the district court said it took judicial notice of the fact he committed a new crime, being a felon in possession of a firearm, and then determined that that first allegation for violating the supervised release was true. And I'd also note that the ---- But was there any dispute at sentencing that he had the marijuana? It wasn't at the whole point of the discussions on whether the four level, it was fair to apply the four levels or not. So if we were to find that it in fact was a grade A violation that's supported by the record, would there be any substantial rights violation in this case? Well, I would say, I have two responses to that. I do think there is a substantial rights violation specifically based off WAC-9 and Hammond, which suggests that sort of a compounding of procedural errors when they're multiple, they can rise to that flagrant level where it does affect substantial rights. Right. Well, let's say that we, and we haven't talked about the case, so I don't know which way we're going to go with this, but let's say we conclude that with regard to the calculation of the sentencing guidelines, that that was implicit because the whole discussion at sentencing was about the application of the four level enhancement. So now we look at the court's failure to articulate on the record the grade A violation instead of a grade B violation. And then we conclude, well, given the marijuana in the car and the fact that that's not in dispute, it's really a grade A violation, where would we go from there? I guess I would, Judge Winn, I'd want to push back on one piece and add one more piece of information, which is that the written judgment in this case, which is in Excerpts of Record 9, it says specifically that the new criminal conduct is 922G. So I think we have two pieces of information. The judge is taking judicial notice and then the actual judgment both suggest that the only finding that was made as to the revocation matter was that it was for only the new criminal conduct. And that was disputed, and I think the court needed to make some sort of expressed finding as to that. And when we look at the record, there's a lot of indications that the only finding the court made, at least as to the revocation, was that it was a grade B violation. So even though the marijuana is considered for the other violation, you're saying you needed to specifically consider it for the revocation and that procedurally was an error? That's right, Your Honor. And I think part of the issue is that there are two defendants have two sets of procedural protections. One is to the sentencing guideline, but there's also a set of procedural protections when it comes to admitting or denying a violation. And he didn't admit to that violation, and my position is that the court would need to make that expressed finding. So just to be sure I understand your answer to Judge Wynn, do you think that the substantive right that was involved here are the rights that were referred to in the baseline, if you will? That's right, Your Honor. And so I'd like to discuss more a little bit why I think this situation falls under the rubrics of Wok, Nye, and Hammond. And again, I think it's the multiple error situation that happens here. And I think particularly as to the revocation sentence, we really have a failure to explain why the district court went to the very, very top of that sentence. And I think there's a strong argument that it affected my client's substantial rights, because when you look comparatively to the other sentence the district court imposed, the 60-month sentence, the court actually varied downward there. So it, I think, raises some inference that, or it's at least peculiar that the district court on the one hand thinks the new substantive offense should be a below-guideline sentence, and yet warrants being maxed out on the new sentence for the revocation conduct. I'd also like to speak briefly to the issue of the district courts considering improper sentencing factors. When it comes to a supervised release violation, the sentencing factors that district courts consider are not the same as for a new criminal sentence. Specifically, factors related to punishment and the need to The problem we have here is the district court expressly said it just wanted to do an overall sentence. It didn't want to disentangle the revocation sentence from the new sentence. And under this Court's precedence in Simtob and McBell, that is a procedural error. So I think in sum, when you look at this case, you see a series of procedural errors which did affect Mr. Gage's case. Well, he was focusing on an overall sentence as being what the defendant would be concerned about. And so the discussion was, well, from the defendant's perspective, what he wants to know is how many months am I serving? But when he actually imposed the sentence, he did split it up between the new offense and the supervised release violation, right? That's true, Your Honor. So where's the error there? Is it that the Court discussed, considering what the overall sentence would be from the defendant's perspective? Well, I think the error goes also when the Court was giving the explanation for the sentence, and in particular, the Court emphasized the need for a lengthy sentence for punitive purposes. And that's precise — and that's in Excerpts of Record 50, and that's precisely the sort of language that this Court in Simtob and McBell said district courts can't consider in revocation sentences. So I would urge the Court to also look to that procedural error. And I see I only have a minute left, and I'd like to reserve the balance of my time. Good morning, Your Honor. Susan Gray, may it please the Court. The district court in this case did its job. Consistent with the Supreme Court's admonition in Cardi to treat the guidelines as a starting point, the court — the record reflects that Judge Breyer did not just — he did just that. He treated the guidelines at the starting point. He recognized that the parties had an agreement on the base level, the acceptance of responsibility. And the only issue that he really needed to decide in this hearing for both the supervised release and the underlying offense was whether or not he possessed the firearm in connection with the controlled substance offense. And he made very specific findings on that, and I'd like to refer the Court to that. That's on ER-15. He found that evidence was sufficient to apply it. He found that it was a commercial transaction. That's at ER-29. And that it was a marijuana transaction in which guns are involved, and that he had the gun for self-defense and to avoid being ripped off, as he put it. That's ER-44. That — those findings drove the sentencing for both the supervised release and also for the guidelines sentence. Well, actually, Your Honor, if I may, the parties had essentially agreed to the base offense level, that it was in 19. If you look at — You're suggesting it was in the plea agreement. There was — pardon me, Your Honor. I wonder — I have a little bit of hearing loss.   It was in the plea agreement. It was in the plea agreement. You're suggesting it was in the agreement, the plea agreement? It wasn't in a plea agreement. This was an open plea. But what the defendant said in his sentencing memo at ER-104 is the calculation of the guidelines as a — that ended up with a 22 minus 3 for acceptance of responsibilities, 19. And here's the guideline calculations. It's 46 to 57. But there was a great deal of discussion. With the bump, the guidelines are this. Without the bump, the guidelines are this. So — and that was true also in terms of the guidelines classification. So the court — But from your perspective, then, the defendant and Judge Breyer had a colloquy which, while a little unusual in the sense of touching all the bases, you think all the bases were touched as required by our case law. Is that right? That's correct, Your Honor. I think that even if this Court — I think the Court not only made the requisite factual findings to support both the enhancement and the class and subsequent supervised release guidelines, but I also think it addressed — it did something that Melina Martinez says the Court must do also in considering the guidelines. It went on to consider the parties' arguments. It went on to consider their requests for downward departure or variance. And considered also, I think, significant in this case is the policy arguments. We're in the unusual situation here that Judge Breyer is on the Sentencing Commission and actually discussed extensively the purpose and the — behind this specific guidelines, that it was to address the situation presented to the Court here that taking a gun to a drug transaction makes it significantly more dangerous. He rejected their argument that it was for some reason the type of drug was involved. Do we — you just mentioned the fact that Judge Breyer is on the Sentencing Commission. Are we to take that into account in any way? And if so, how? No, Your Honor. And to the extent I might — I might have suggested that, no. I mean, he — it was more in the way in the context of the hearing and the fact that he, perhaps because of that and who knows, really engaged with the defendant on their policy arguments. And that's, quite frankly, what the majority — the defendant conceded at ER-104 that must admit that the indicia found within his car could lead one to surmise that the guidelines — that the gauge was participating in street-level marijuana sales at the time of his arrest. The Court is likely to find, as a guideline interpretation matter, that this enhancement applies as a legal and guideline interpretation. So I think it's telling in terms of the strength of the evidence to support the guideline, the enhancement, as well as the class, that the defendant immediately pivoted to a policy argument or the argument that, if there was any confusion in this hearing, was engendered by defendant's argument that if only the government had charged this case differently. And — Where do we look, Counsel, aside from the basic sentence? Where do we look in terms of the statements from the district court explaining why he imposed a 22-month sentence for the release violation? Your Honor, the Court made very specific statements about that. If you'll give me just one moment. First of all, it wasn't based on the underlying offense. The Court — That's somewhat at issue, don't you think? Pardon me? That's a little at issue. Doesn't it kind of get melded together? No, Your Honor, I think not. He said you really messed up. And he did recognize, consistent with Simtab, that — and then you went ahead and you committed this other crime. But Simtab specifically says a court can't base its supervised release sentence solely on a new crime, but it may look to the underlying contact as one of many acts contributing to the severity of the violation. And the fact that it was a similar type of transgression certainly was relevant. But the Court really went on to say he had three goals, and this was consistent really throughout the entire hearing. And there's no error in the Court attempting to fashion an overall sentence that was fair, as the Court said, to everyone, and that he was focused on recidivism because, as he stated, whatever message we've been trying to get across, it's not being received. The second part is the public had a right to be protected. And safety is important, and this conduct is unsafe. So he spoke not to just a need for deterrence under the 3553A factors, but a need for a specific deterrent. And when you don't have somebody who's able to conform his conduct on supervised release, the only option is a high-end sentence. And then I think the Court focused at the end of the hearing, or at ER 33, he wasn't focused on punishment, but the need to protect the public given his history and the characteristics and the type of the breach of trust here. Maybe the thing to do is not emphasize don't commit another crime while it's on supervised release, but, gee, I better protect the public out there. So the Court specifically made the finding that supervised release, being out on supervised release, isn't working for you. It's not protecting the public. You're doing the same thing. SimTab tells us that's okay. The courts relied on many other factors in determining that the 22-month sentence was appropriate. Kennedy. Just focusing for a second just on the 22-month violation or release violation, what are the, if you will, the four corners of the argument that we can rely upon to see that that was appropriate and was not just melded into the other sentence? In other words, what specifically did the judge say, what cases did he rely upon to permit him to give the 22-month sentence on the release? Well, Your Honor, he did at one point, and I apologize. I can't find the site right there. The court said, I understand I can't give more than 22 months on supervised release, and that's at ER 21. And although he said, I'm not sure if it makes a difference how you cut it up, he then went on to say, you're, you've been terrible on supervision. Mr. Gage should understand when I give the overall sentence that he had, had he not been on supervised release, this sentence would have been less, and that's at ER 23. I want, and then at 23 or 24, I want to talk in terms of the overall sentence. But at the end of the day, he has to understand he's being published, punished for, he is being sentenced for two different issues. One is, you screwed up on supervised release. You're not amenable to it. I need to protect the public. The other is the addressing the underlying offense. In order to give the 22 months supervised release, he had to have a class A violation, right? And you're saying, forget the underpinnings for the class I violation for when he talked about marijuana, when he was discussing the main sentence? That's right. So you're saying he didn't have to say it again, although for the supervised release, he only cited the drug offense. The supervised release, actually, if you look at charge one, it's the gun offense. Sorry. When he talked about the supervised release, he talked about the gun offense. He, the defense. He didn't talk again about the marijuana offense, but you say he didn't have to. I mean, it's the marijuana offense that gets it into class A, right? That's correct, Your Honor, and there's no dispute about that. He didn't talk about it again because we know that we already have those findings. That's correct, Your Honor. And I don't think that we require courts to go back and repeat something they'd said earlier, and I think it's telling that in their sentencing memorandum, the defendant does the same thing. He's now complaining about the judge essentially carrying over that finding in terms of imposing the supervised release violation, but that's the same thing he did at E.R. I believe it's 112 of his sentencing memo, where he said basically, in opposing the class A grade, I'm just going to incorporate my arguments as to the enhancement. So to now say the judge should have gone back and made a separate finding when they didn't specifically make that entirely separate finding is telling. Your Honor. I have no questions. Why am I calling? All right. Thank you very much. Thank you, Your Honor.  Okay. We have a little rebuttal time, counsel. So I'd like to focus on the revocation sentence, which Judge Smith mentioned, and I think that is the part of the sentence where the procedural errors were the strongest and the most multiple. We obviously have the lack of any announcement of the guidelines range, and particularly as to the revocation sentence, no one even mentioned ranges. As to the new offense, the government mentioned what ranges would apply. A defense counsel mentioned what ranges. There was no mention whatsoever of any of the ranges that would apply. And we have a situation where my client did get the statutory maximum sentence. Now, that then ties into the need for a stronger explanation when you have the higher sentence. A sentence, even if it was a class A, a sentence towards the top of the guidelines range should have a stronger explanation. But the problem we have here as well is that the district court was really taking an overall sentence approach. It was not disentangling the different factors that apply, and I believe these three errors taken together affected my client's right, and I would therefore urge the court to vacate and remand for a procedurally proper sentencing hearing. Thank you, counsel. Thank you both for your argument. The case just argued is submitted.
judges: M. Smith, Nguyen, Restani